```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS


L.L.,[1]

                    Plaintiff,

vs.                                     Case No. 21-4022-SAC

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

                    Defendant.
```

## MEMORANDUM AND ORDER

This is an action appealing the denial of Social Security benefits. Plaintiff filed an application for disability benefits on September 15, 2017 and an application for supplemental security income benefits on November 30, 2017. He alleges that he has been disabled since June 22, 2017. The administrative law judge (ALJ) conducted a video hearing on October 22, 2019, considered the evidence, and decided on February 12, 2020 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's applications for benefits.

---

[1] The initials are used to protect privacy interests.

I. Standards of review

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305, U.S. 197, 229 (1938)). This standard is "not high," but it is "'more than a mere scintilla.'"

Id., (quoting Consolidated Edison, 305 U.S. at 229). It does not require a preponderance of the evidence. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the sufficiency of the evidence, not its weight." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. The ALJ's decision (Tr. 23-34).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 24-26). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination

3

of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's applications should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff last met the insured status requirements for Social Security benefits through March 18, 2018. Second, plaintiff has not engaged in substantial gainful activity since June 22, 2017. Third, plaintiff has the following severe impairments: right ankle/trimalleoral fractures and right hip/femoral head/acetabular fractures status-post open reduction internal

4

Case 5:21-cv-04022-SAC   Document 44   Filed 05/16/22   Page 5 of 14


fixation surgery. Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Fifth, plaintiff has the following residual functional capacity (RFC):

> [Plaintiff can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. The [plaintiff] should never climb ladders, ropes and scaffolds; and can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. The [plaintiff] should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration. The [plaintiff] can occasionally use foot controls with the right lower extremity.

(Tr. 28-29).

Based upon the testimony of a vocational expert, the ALJ determined that plaintiff could not perform any past relevant work, but that he could perform jobs existing in the national economy, such as collator operator, electrical assembler and retail price marker. (Tr. 34). These would be classified as "light exertional, unskilled (SVP 2) jobs." (Tr. 34).

III. The decision to deny benefits shall be affirmed.

A. Impairments since birth

Plaintiff argues that the denial of benefits should be reversed and remanded first because the ALJ did not consider

impairments plaintiff has had since birth.[2]  He states that he was born with speech impediments and dyslexia.

In general, plaintiff has the burden to prove that he is disabled and to inform the Social Security Administration about or submit all the relevant evidence known to plaintiff.  20 C.F.R. § 404.1512(a)(1).  Nevertheless, the court recognizes that the ALJ must in every case ensure that an adequate record is developed consistent with the issues raised.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997).  This requires obtaining pertinent, available records that come to the attention of the ALJ during the course of a hearing.  Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996).  Plaintiff has not supplied good cause for the court to find that there exists relevant evidence of speech impairments and dyslexia which the ALJ ignored or should have developed.[3]  Therefore, the court rejects plaintiff's first argument to reverse and remand the denial of benefits.  See Wall v. Astrue, 561 F.3d 1048, 1063-65 (10th Cir. 2009); Hanson v. Apfel, 1999 WL 160821 *2 (10th Cir. 3/24/1999).

---

[2] Plaintiff's brief (Doc. No. 33) states that "the court" did not consider this and other issues or records.  The court assumes he means the ALJ or the Appeals Council.

[3] Plaintiff had a non-attorney representative at the hearing before the ALJ. He did not raise a question regarding records of speech impairments or dyslexia during the hearing.

B. <u>Mental diagnoses and past history of mental health issues</u>

Plaintiff also asserts that the ALJ did not consider his mental diagnosis and past history of mental issues. The ALJ's order concluded that the evidence of mental issues showed that plaintiff suffered from no more than a "mild" limitation in any functional area and no more than a minimal limitation in the ability to do basic work activities. (Tr. 27). The order further stated:

> [Plaintiff's] alleged brain wave problems, . . . right side head injury . . . hysteria, hypnotism, emotional stress, mental health issues, emotional difficulties, losing focus, easily distracted, disorganized, hallucinations/visions, nightmares, stuck in moment/in the past, . . . depression, anxiety, schizophrenia, bipolar, anxiety attacks, and black outs are not medically determinable impairments. . . A medically determinable impairment may not be established solely based on the claimant's allegations regarding symptoms. . . [Plaintiff] must come forward with evidence from an acceptable medical source in order to establish the existence of a medically determinable impairment.

(Tr. 27).

The ALJ considered evidence of an "acute stress reaction and altered behavior" after a November 2017 car accident. He noted that medical authorities examined plaintiff for mood disorder, alcohol/drug induced dementia and restricted affect with paranoia. (Tr. 27). Plaintiff's "compromised" memory at that time was considered. (Tr. 28). The ALJ observed that plaintiff was discharged from the hospital in stable condition after the accident and that there was no further record of mental treatment. (Tr.

7

28).  He concluded therefore that any impairment had not lasted for a continuous period of twelve months.  (Tr. 28).

The ALJ also recognized that, after plaintiff was released from incarceration in August 2018, he was assessed at the Guidance Center.  During the assessment plaintiff endorsed mental problems with interacting with others and paranoid thinking.  (Tr. 28).  The ALJ stated:

> On examination, [plaintiff] also exhibited dramatic demeanor, restlessness, anxiousness, agitation, slurred language skills, endorsed auditory hallucinations, clouded consciousness, impaired memory, and poor judgment.  Although [plaintiff] was recommend[ed] several services including individual therapy, medication management, case management, and substance abuse program, by November 2018, due to [plaintiff's] lack of participation, services were cancelled.

(Tr. 28).  The ALJ concluded that the record reflected no formal diagnoses for mental impairments or treatment and, therefore, decided that there was insufficient medical documentation to support a finding of a medically determinable mental impairment.[4] (Tr. 28).  He further determined that plaintiff's ability to engage in activities indicated that he was not as limited as one would expect with the physical or mental impairments plaintiff claimed as disabling.  (Tr. 29).

---

[4] Under 20 C.F.R. § 404.1521: "[A] physical or mental impairment must be established by objective medical evidence from an accepted medical source. . . . [A claimant's] statement of symptoms, a diagnosis, or a medical opinion [will not be used] to establish the existence of an impairment."

8

Upon review, the court finds that the ALJ considered the mental diagnoses and mental health accounts in the record, as well as plaintiff's testimony, and that the ALJ's findings are supported by substantial evidence.

C. Medical records from the Leavenworth County Jail and KU Medical Center

Plaintiff asserts that the ALJ did not receive all the records from the Leavenworth County Jail (where plaintiff is currently housed) and the KU Medical Center after March 28, 2018. The administrative record contains documents from both sources. See Ex. 12F and Ex. 17F. The ALJ also held the record open for the addition of records. (Tr. 46-48). Plaintiff has not provided grounds for the court to find that there are additional relevant materials from these sources which have not been submitted to the record, or that relevant documents which are now part of the administrative record have not been considered by the ALJ. Therefore, the court finds that the ALJ did not ignore relevant evidence produced for his attention or violate his duty to develop the record.

D. Police brutality

Plaintiff contends that the ALJ failed to consider that plaintiff was a victim of police brutality. The ALJ considered whether plaintiff was capable of performing substantial gainful employment regardless of the cause of his functional limitations.

9

The court finds that the ALJ's conclusions in that regard are supported by substantial evidence and that plaintiff has not shown that material evidence of police brutality was ignored by the ALJ.

    E. Request to subpoena other records

Plaintiff refers to Exhibit 11E which contains a pre-hearing request for subpoenas of various medical records. At the administrative hearing, however, plaintiff's representative indicated that the record was complete except for records that the ALJ indicated had been requested from the Guidance Center and the Leavenworth County Jail. (Tr. 47). Records from those sources were eventually included in the record.

Plaintiff's argument for the consideration of other evidence is not supported by any specific showing which demonstrates the materiality of that evidence. Plaintiff only makes broad representations. Therefore, the court is not persuaded that material evidence has been omitted from the record.

The court denies any request that the court subpoena records for two reasons. First, the court is not convinced from plaintiff's general assertions that the records are material and, second, the court's role is limited to reviewing the administrative record that is before it. As the court has already stated, the court is to determine whether substantial evidence contained in the administrative record supports the decision to deny benefits and whether the decision was done in conformity with legal

10

standards.  Lax, 489 F.3d at 1084.  The court does not review evidence which has not been submitted to the Administrative Law Judge (ALJ) or the Appeals Council, unless there is a showing that the new evidence "is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).

### F. Imbalance and dizziness

Plaintiff appears to contend that he has issues with balance and dizziness which were not adequately considered by the ALJ. These issues were not mentioned by plaintiff during his testimony before the ALJ and are not established in the administrative record.  They do not provide grounds to reverse and remand the decision to deny benefits.

### G. Hypothetical question

Plaintiff suggests quite generally that substantial evidence does not support the hypothetical question used to support the ALJ's denial of benefits.  After a careful review of the administrative record, including the findings of state agency consultants, the court has determined that the RFC and the hypothetical question are supported by substantial evidence.

### H. Remand under sentence six

Finally, plaintiff has submitted an evaluation of competency to stand trial for the court's consideration. Doc. No. 40.  The evaluation is signed by a master's level psychologist and a

11

licensed clinical psychologist.  The evaluation was performed on March 17, 2022.  It consisted of a brief clinical interview, a Mini Mental Status Exam 2 (MMSE-2), and the MacArthur Competence Assessment Tool – Criminal Adjudication (MacCAT-CA).  The report indicates that plaintiff recited a kind of delusional history of criminal charges and reported that he had been hospitalized for psychiatric reasons and diagnosed with schizophrenia, paranoia, depression and anxiety.  There is no indication that records of the psychiatric hospitalization or diagnoses have been produced for the administrative record in this case.  It also appears that those records were not produced for the March 17, 2022 evaluation.

The MMSE-2 is a cognitive screener.  Plaintiff had little difficulty performing the test and scored 27 out of 30 possible points, which was indicative of normal cognitive functioning.  On the MacCAT-CA, plaintiff demonstrated minimal to no impairment in understanding the legal system and was able to orient himself to new information.  Plaintiff also demonstrated minimal to no impairment in reasoning about the legal situation presented in a case vignette and in his own situation.  However, plaintiff demonstrated a clinically significant impairment in his ability to ground himself in reality and to appreciate his own legal situation and the possible choices.  Therefore, the examiner concluded that plaintiff did not meet the criteria as competent to stand trial in

the State of Kansas and it was recommended that he be referred to the care of a psychiatric hospital.[5]

The court has requested the parties to address whether the evaluation was additional evidence outside the administrative record which justified remand pursuant to sentence six of 42 U.S.C. § 405(g).  Doc. No. 41.  Plaintiff's response was non-specific.  Plaintiff asserted that the court should consider all the evidence on the record and evidence in the administrative record that was not considered previously, and that the court should remand the case for an award of benefits.  Doc. No. 43.

Defendant has argued against a sentence six remand on the grounds that the evaluation is not "time-relevant."  Doc. No. 42, p.2.  The Social Security Administration only considers "new and material evidence" if such evidence "relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 404.970(b).  Defendant asserts that the evaluation does not address that period of time.  Defendant has further argued that that ALJ's decision relied upon "unskilled" jobs with low mental demands which should be within the capacity of someone with normal cognitive functioning and minimal to no impairment in

---

[5] From State v. Lowery, 2022 WL 128579 (Kan.App. 1/14/2022), the court is aware that plaintiff was considered competent to stand trial in the state district court for Leavenworth County in 2019 and competent to represent himself at trial.  The Kansas Court of Appeals affirmed these decisions.  Id. at *9-10.

13

understanding the legal system, including using and understanding new information.

The court concurs with defendant's reasons for finding that remand under sentence six is not warranted by the March 24, 2022 evaluation of plaintiff's competency to stand trial.[6]

IV. Conclusion

The court finds that substantial evidence contained in the administrative record supports the decision to deny benefits and that the ALJ's decision was done in conformity with legal standards.  The court further finds that remand pursuant to sentence six of § 405(g) is not warranted.

**IT IS THEREFORE ORDERED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision to deny benefits.

Dated this 16th day of May 2022, at Topeka, Kansas.

s/Sam A. Crow_____
U.S. District Senior Judge

---

[6] The court has been assigned numerous cases filed by plaintiff.  E.g., Case Nos. 20-3266, 21-3107, 21-3061, 21-3125, and 21-3120.  From this experience and considering the limited evidence of mental incapacity which has been presented, the court is convinced that plaintiff is able to represent himself in a civil action and that proceedings under Fed.R.Civ.P. 17(c) are unnecessary.